1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HOSEA SMITH,

11            Petitioner,                    No. CIV S-09-2200 WBS CHS P

12       vs.

13   D.K. SISTO,

14            Respondent.         FINDINGS AND RECOMMENDATIONS

15   _____/

16                          I.  INTRODUCTION

17            Petitioner Hosea Smith is a state prisoner proceeding pro se with a petition for

18   writ of habeas corpus brought pursuant to 28 U.S.C. §2254.  Petitioner is currently serving an

19   indeterminate sentence of 16 years to life following his 1983 second degree murder conviction in

20   the Los Angeles County Superior Court.  In the pending petition, petitioner challenges the

21   execution of his sentence, and specifically, the decision of the Board of Parole Hearings that he

22   was not suitable for parole after a February 26, 2008 parole suitability hearing.  Petitioner claims

23   that (A) the Board's decision was unsupported by some evidence in violation of his right to due

24   process of law and (B) the denial of parole violated the terms of his negotiated plea agreement.

25   /////

26   /////

                                       1

## II.  BACKGROUND

According to the evidence in the record, the victim, Carolyn Gaston, was petitioner's common law wife although they had been separated for approximately three to four weeks.  On the day of the offense, petitioner went to the home of Gaston's mother to discuss custody matters regarding their daughter.  Gaston then returned with petitioner to his house.  On the way they bought some cocaine and gin.  At the house, they drank and free-based cocaine, and then got into an argument.

Petitioner retrieved an unloaded automatic weapon and pointed it at Gaston.  He then placed the weapon on the floor.  As Gaston tried to get the weapon, a struggle ensued and they began fighting on the floor.  The fight lasted two or three hours.  Gaston had unusual strength due to being on free-based cocaine.  Petitioner hit Gaston several times with a large crystal ashtray.  She suffered 11 major blows to the head area and lost two teeth.  Her nose and right hand were fractured and she had lacerations on her face, hands and shoulders.  The cause of death was determined to be multiple cranial cerebral injuries resulting from blunt-force trauma to the head.  Cocaine, free-based cocaine, PCP and ethyl alcohol were present in her bloodstream at the time of death.

After Gaston died, petitioner drove their daughter to his mother's house in Arizona before returning to Long Beach, California, where he turned himself in to the police.  After his arrest, he provided the above version of facts regarding his altercation with Gaston.  At the scene of the crime, police found two seven-inch ashtrays and one two-foot high crystal ashtray which was covered with blood.  Items in the room where the fight occurred were splattered with blood and the room was in total disarray.

Petitioner pleaded guilty to second degree murder with use of a firearm and received a sentence of 16 years to life.  His life term began in 1983 and his minimum eligible parole date passed on February 17, 1992.  On February 26, 2008, a panel of the Board of Parole Hearings ("Board") conducted a parole suitability hearing to determine if petitioner would pose

2

1    an unreasonable risk of danger or threat to society if released from prison, and thus whether he

2    was suitable for parole.  Citing various factors, including, but not limited to, the nature and

3    gravity of the offense, petitioner's failure to participate in self-help programs, and an unfavorable

4    psychological report, the panel concluded that he was not suitable for parole.  The Board

5    subsequently adopted the decision of the panel.

6         Petitioner challenged the Board's denial of parole on due process grounds in a

7    petition for writ of habeas corpus to the Los Angeles County Superior Court.  In a written

8    decision dated October 3, 2008, the superior court denied petitioner's claim.  The California

9    Court of Appeal, Second District, and the California Supreme Court likewise denied relief.

10              III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

11        An application for writ of habeas corpus by a person in custody under judgment of

12   a state court can be granted only for violations of the Constitution or laws of the United States.

13   28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

14   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

15   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

16   the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

17   U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

18   AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

19   state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

24   28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

25   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

26   /////

IV.  DISCUSSION

A.      Due Process

Petitioner claims that the Board's decision to deny parole was unsupported by sufficient evidence, in violation of his right to due process.  The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws.  *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, in and of itself, create for prisoners a protected liberty interest in the receipt of a parole date.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).  If a state's statutory parole scheme uses mandatory language, however, it "'creates a presumption that parole release will be granted' when or unless certain designated findings are made," thereby giving rise to a constitutional liberty interest.  *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)).

California's statutory scheme for determining parole for life-sentenced prisoners provides, generally, that parole shall be granted "unless consideration of the public safety requires a more lengthy period of incarceration."  Cal. Penal Code §3041.  This statute gives California state prisoners who have been sentenced to prison with the possibility of parole a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; and *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at

4

12)).

Despite existence of this liberty interest, the full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16.

Additionally, as a matter of California state law, denial of parole to state inmates must be supported by at least "some evidence" demonstrating future dangerousness. *Hayward v. Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). California's "some evidence" requirement is a component of the liberty interest created by the state's parole system." *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). The federal Due Process Clause requires that California comply with its "some evidence" requirement. *Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam). Accordingly, a reviewing court such as this one must "decide whether the California judicial decision approving the... decision rejecting parole was an "unreasonable application" of the California 'some evidence' requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603 F.3d at 562-63. This analysis is framed by the state's statutes and regulations governing parole suitability determinations. *See Irons*, 505 F.3d at 851.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers. The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any

5

> conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b).  The regulation also lists specific circumstances which tend to show suitability or unsuitability for parole.  15 Cal. Code Regs. §2402(c)-(d).  The overriding concern is public safety and the focus is on the inmate's *current* dangerousness.  *In re Lawrence*, 44 Cal. 4th at 1205.  The proper articulation of the standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety.  *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008).  In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety.  *In re Lawrence*, 44 Cal. 4th at 1227.

At petitioner's 2008 parole suitability hearing, the Board properly considered both positive and negative factors bearing on his suitability for parole, but ultimately concluded that he was not suitable.  The Board relied, in part, on the nature and gravity of petitioner's commitment offense.  Under the applicable state regulations, factors relating to a commitment offense tend to show unsuitability for parole where the offense is especially heinous, atrocious or cruel.  15 Cal. Code Regs. §2402(c)(1).  In this case, the Board found that the commitment offense was especially heinous because it was "carried out in a manner which demonstrates an exceptionally callous disregard for human suffering" (15 Cal. Code Regs. §2402(c)(1)(D)) and because "the victim was abused, defiled, and mutilated" during her death (15 Cal. Code Regs. §2402(c)(1)(C)).

To support a finding that an offense was particularly egregious for purposes of denying parole, "the offense must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of that offense."  *In re Scott*, 119 Cal.App.4th 871, 891 (1st Dist. 2004).  An offense is more aggravated or violent when it involves severe trauma,

6

1  "as where death resulted from severe trauma inflicted with deadly intensity; e.g. beating,

2  clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon

3  not resulting in immediate death or actions calculated to induce terror in the victim." *Id.* at 892.

4  In this case, there is evidence that petitioner brutally beat, clubbed and bludgeoned Gaston to

5  death.  He used a large crystal vase to inflict multiple wounds over a long period of time.  This

6  evidence supports a finding that petitioner committed the murder in a more aggravated and

7  violent manner than ordinarily shown by those typically convicted of first or second degree

8  murder.  It was reasonable for the Board's to conclude that petitioner still presented an especially

9  dangerous risk of danger to society based on this evidence.

10            In determining whether a prisoner continued to pose a current risk of danger to

11  society, the Board was also authorized to consider his past and present attitude toward the crime

12  and whether he has shown signs of remorse, including whether he indicates that he understands

13  the nature and magnitude of the offense.  15 Cal. Code Regs. §2402 (b) & (d)(3).  Based in part

14  on an unfavorable 12 page psychological evaluation, the Board found that petitioner continued to

15  minimize his role in the fight that led to Gaston's death, which indicated that he did not

16  understand the nature and magnitude of the offense.  During a July 24, 2007 interview taken for

17  purposes of the evaluation, petitioner stated while giving an account of his life offense:

18            I snapped, I guess.  I did not have an outlet for my emotions.  I
          threw an ashtray at her.  It hit the left side of her face.  This was
19            like something that happens on TV.  Then, I got scared.  I checked
          her pulse.  I did not know what to do.  She had blood on her.  I felt
20            like I wanted to kill myself.  So, I took my daughter to my mom's
          house and lied to her...

21

22  (Pet., Ex. D at 4.)  The evaluator noted that petitioner's account of the life offense differed from

23  official records and that, after further probing, petitioner merely repeated that he threw the

24  ashtray at the victim, denying there was any further struggle.  This, of course, was in striking

25  contrast to police reports, autopsy reports, and petitioner's own prior statements.  The evaluator

26  concluded:

1
2
3
4
5
6
7
8
9
10

It is clear that Mr. Smith has evaluated his criminal behavior and pondered on many factors that contributed to his crime.  He has evidenced some insight into his feelings, thoughts, and behaviors, but his work is not done. ...[I]t appears that Mr. Smith continues to utilize similar coping mechanisms that got him in trouble in the first place.  For example, instead of facing the truth about his criminal behaviors, their exten[t] and severity, he uses minimization, denial, suppression and , at this time, subtle (or partial) projection of blame on the victim or justification when he *quickly* informs the listener about the victim's extensive drug use.  Similarly to his early psychological evaluations, he continues to present himself in favorable light by omitting serious character flaws, and highly controversial behaviors.  For example, he admits to killing his common-law wife, but does not report that he has hit her violently for two to three hours while beating her to death.  The latter admission might imply cruelty and indifference to human suffering and as such might not be acceptable to Mr. Smith.  Hence, he admits to the murder but he omits pertinent details that emphasize his negative characteristics.

11   (Pet., Ex. D at 5.)

12        Based on the information in petitioner's most recent psychological evaluation, it

13   was reasonable for the Board to conclude that his lack of remorse and understanding of the nature

14   and magnitude of the offense made him an unpredictable risk of danger to society if released on

15   parole.  *See In re McClendon*, 113 Cal. App.4th 315, 323 (1st Dist. 2004) (prisoner's minimizing

16   "explanations" regarding his life crime were unsupported by the record and constituted some

17   evidence that he was unsuitable for parole because he had failed to accept full responsibility for

18   his crime and because he still lacked remorse and understanding of the nature and magnitude of

19   the offense).  Moreover, the psychological evaluator concluded that petitioner still posed a "low

20   to moderate" risk for future violent recidivism.  *See Hayward*, 603 F.3d 546, 563 (2010)

21   (professional evaluator's opinion that the prisoner posed a "low to moderate" risk of future

22   violence, combined with evidence that the commitment offense was especially aggravated,

23   established evidence of future dangerousness to support the denial of parole).

24        The Board also found that petitioner failed to demonstrate that he gained insight

25   into his anger and substance abuse issues through self-help therapy programs in prison.  He had

26   taken only one anger management class five years prior to the parole suitability hearing at issue.

He had participated in some substance abuse prevention programming, including AA/NA courses, however, his responses to the panel's questions at the 2008 parole suitability hearing demonstrated that he did not know or fully understand the 12 steps forming the basis of these programs.  Given the nature and circumstances of petitioner's offense, including the fact that he was abusing cocaine just prior to the murder and admittedly had a substance abuse problem, the Board was understandably troubled by his lack of demonstrated effort in the area of anger management and substance abuse prevention.

In sum, at the time of petitioner's 2008 parole suitability hearing, there was some evidence that he was not suitable for parole because he still posed an unreasonable risk of danger or threat to the public if released.  *See In re Shaputis*, 44 Cal.4th at 1261 n.20 ("petitioner's failure to take full responsibility for past violence, and his lack of insight into his behavior, establish that the circumstances of petitioner's crime and violent background *continue* to be probative to the issue of his *current* dangerousness").  Circumstances relating to petitioner's commitment offense, his past and present attitude toward the offense, and insufficient participation in self-help programming, considered together with the information contained in a recent unfavorable psychological report, provide more than enough evidence to support the Board's 2008 denial of parole.  Because it is clear that the Board's decision withstands the minimally stringent "some evidence" test, the remaining factors cited by the Board need not be reviewed here.  The Board's decision did not violate petitioner's right to due process of law.

B.     Alleged Violation of the Plea Agreement

Petitioner further contends that the Board's 2008 denial of parole violated his plea agreement because he has served twenty-five years in prison and has not been paroled or given a parole release date.  Petitioner has failed to state a valid federal claim for relief.  In making this claim, petitioner overlooks the fact that he was sentenced to a term of 16 years *to life*.  Petitioner also fails to show that his negotiated plea agreement was conditioned in any way upon his receipt of a favorable parole decision at some point.  It is the habeas corpus petitioner's burden to show

9

1  he is in custody in violation of the Constitution.  *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir.

2  2002); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations "fall far

3  short of stating a valid constitutional violation").  Petitioner is not entitled to relief.

4  V.  CONCLUSION

5     For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

6  application for writ of habeas corpus be DENIED.

7     These findings and recommendations are submitted to the United States District

8  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

9  one days after being served with these findings and recommendations, any party may file written

10  objections with the court and serve a copy on all parties.  Such a document should be captioned

11  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12  shall be served and filed within seven days after service of the objections.  Failure to file

13  objections within the specified time may waive the right to appeal the District Court's order.

14  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

15  1991).  In any objections he elects to file petitioner may address whether a certificate of

16  appealability should issue in the event he elects to file an appeal from the judgment in this case.

17  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

18  certificate of appealability when it enters a final order adverse to the applicant).

19   DATED: August 13, 2010

20

21  CHARLENE H. SORRENTINO
   UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26